215 F.2d 776
 E. A. LYNCH, as Trustee in Bankruptcy for the Estates of
Margaret A. Stotler and Robert L. Stotler,
Bankrupts, Appellant,
v.
Robert L. STOTLER and Margaret A. Stotler, Appellees.
 No. 14183.
 United States Court of Appeals, Ninth Circuit.
 Sept. 27, 1954.
 
 Craig, Weller & Laugharn, Herbert F. Laugharn, Thomas S. Tobin, A. J. Bumb, Los Angeles, Cal., for appellant.
 Lyle M. Stevens, Long Beach, Cal., for appellee.
 Before FEE and CHAMBERS, Circuit Judges, and CLARK, District Judge.
 CHAMBERS, Circuit Judge.
 
 
 1
 The appellees, owners and operators of the Humpty Dumpty Inn in Long Beach, upon their voluntary petitions, were adjudged bankrupts on May 5, 1952. Prior thereto in December, 1950, they had executed and recorded in the office of the County Recorder of Los Angeles County a Declaration of Homestead which read in its entirety as follows:
 
 
 2
 'Declaration of Homestead
 
 
 3
 '(By Head of Family)
 
 
 4
 'Know All Men by These Presents):
 
 
 5
 'That I, Robert L. Stotler and Margaret A. Stotler, husband and wife, as joint tenants, do certify and declare as follows:
 
 
 6
 '(1) I am . . .
 
 
 7
 '(2) I am the head of a family consisting of . . . and who (is, are). . . under my care and maintenance.
 
 
 8
 '(3) I am now residing with my family on the land and premises located in the City of . . ., County of Los Angeles, State of California, and more particularly described as follows:
 
 
 9
 'Lot 87 of Tract No. 13636 in the city of Long Beach as per map recorded in Book 296, Ages 26, 27 and 28 of Maps in the office of County Recorder of said county.
 
 
 10
 '(4) I claim the land and premises hereinabove described, together with the dwelling house thereon, and its appurtenances, as a Homestead.
 
 
 11
 '(5) I estimate the actual cash value of the land and premises hereinabove described to be . . .($. . .) Dollars.
 
 
 12
 '(6) No former declaration of homestead has been made by me, except as follows: . . .
 
 
 13
 '(7) The character of said property so sought to be homesteaded is as follows: . . .
 
 
 14
 'In Witness Whereof, I have hereunto set my hand this sixth day of December, 1950.[1]
 
 
 15
 '(s) Robert L. Stotler (s) Margaret A. Stotler
 
 
 16
 'State of California County of Los Angeles--ss
 
 
 17
 'On this sixth day of December, A.D., 1950, before me, Edgar J. Bramble, a Notary Public in and for said County and State, personally appeared Robert L. Stotler and Margaret A. Stotler, known to me to be the person whose name is subscribed to the within Instrument, and acknowledged to me that they executed the same.
 
 
 18
 'In Witness Whereof, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.
 
 
 19
 '(s) Edgar J. Bramble, Notary Public in and for said County and State.
 
 
 20
 My commission expires November 27, 1952. 'ENDORSED
 
 
 21
 'Document No. 882. Recorded at request of Robert L. Stotler Dec. 26, 1950, 15 min. past 10 a.m. Book 35151, page 425, Official Records County of Los Angeles, California. Fee $1.70.
 
 
 22
 'Mame B. Beatty, County Recorder 'By F. Counell, Deputy
 
 
 23
 'Homestead, Declaration of, Wolcott's Form 738.'
 
 
 24
 In the bankruptcies, which were consolidated, the Stotlers asserted that their real estate described in the declaration was exempt property under California law and an exemption which should be recognized as against the trustee and the bankrupts' creditors.
 
 
 25
 The trustee and the referee denied the exemption, holding the declaration too incomplete to be legally effective. Their main objection to the instrument was that Section 1263 of the California Civil Code provides, inter alia, that a declaration of homestaed must contain 'an estimate of their (the premises) actual cash value' and, so the trustee and referee said, this requirement had not been met; therefore, no valid declaration had been made.
 
 
 26
 The bankruptcy schedules reported the real estate, asserted its exemption under California law and listed the property as having no value 'above the encumbrances and homestead.' Nowhere in the record before this court is there any indication that the debtors have ever officially stated what the actual value is of the property itself. It does appear that two trust deeds (i.e., the encumbrances) on the property secured amounts which total about $12,800.
 
 
 27
 On review in the district court, the referee was reversed, 114 F.Supp. 301, the district court construing the document to mean that the homestead declaration could affect only so much of the property's value as was unencumbered, and it was logical to assume herein that the declarants meant to say in their declaration, when they left the value of the property blank, that in their opinion the property had no value or no value above encumbrances.
 
 
 28
 The argument is ingenious, but we cannot accept it. As we see it, in logic, the argument turns upon itself and destroys itself in the mere statement. For if one must have value to declare a homestead, then how could there be a homestead of no value? In our view, the Stotlers, being face up against the necessity of stating the value of their property in the declaration, failed to state that the property had value or no value and, if it had value, what the value was.
 
 
 29
 Construing, as we do, that the claimants failed to declare the value of the homestead, then we come to the legal effect of the failure.
 
 
 30
 Both parties cite many California homestead cases. Many of these cases tend toward a liberal construction of the California exemption statutes.
 
 
 31
 Although homestead exemptions are a creature of statute and not of common law, we are bound to and we do accept the idea that the statute should not be too strictly construed. But where the homestead requires as a condition of its existence the performing of certain acts and some of them have not been performed, we find no California case that would justify us in reading statutory requirements out of the statute. As we have construed the declaration, the bankrupts did little more than say in writing, 'We want a homestead.'
 
 
 32
 We think we are compelled to deny the homestead on the basis of the underlying reasoning of the following California cases: Rich v. Ervin, 86 Cal.App.2d 386, 194 .2d 809; Crenshaw v. Smith, 74 Cal.App.2d 255, 168 P.2d 752; Schuler-Knox Co. v. Smith, 62 Cal.App.2d 86, 144 P.2d 47; Reid v. Englehart-Davidson Co., 126 Cal. 527, 58 P. 1063; Ames v. Eldred, 55 Cal. 136; Ashley v. Olmstead, 54 Cal. 616.
 
 
 33
 It may be said that the California statute serves no useful purpose in requiring that the value of a homestead should be set forth in a declaration. Maybe the United States statutes should allow a homestead of decent value. Those are legislative matters.
 
 
 34
 The circumstances of the execution of the homestead on the standard California Wolcott form, we have no way of knowing. Edgar J. Bramble appears thereon as the notary who executed the jurat. If the bankrupts composed the declaration themselves and Mr. Bramble acted only in his proper function as a notary, then the Stotlers must charge their loss to their own failure to carry out the plain suggestions of the form or to seek advice from a competent lawyer. There is no indication that Notary Bramble is a member of the California bar.
 
 
 35
 The judgment of the district court is reversed with instructions to affirm the referee in denying the claim of the bankrupts for exemption of the real estate herein involved.
 
 
 
 [1]
 All blanks were created by the printer. No blanks were made or drawn and no physical attention was paid to any of the blanks indicated by dotted lines after the printer finished